IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-HC-02166-M-RJ

| | |
|---|---|
| QUARTEZ TRAVON MOORE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WENDY HARDY, ) | |
| ) | |
| Respondent. ) | |

This cause is before the court on respondent's motion to dismiss, Mot. [D.E. 15], and petitioner's "motion for entry of default and default judgment," Mot. [D.E. 18].

First, because respondent answered in the time allowed by the court, see Order [D.E. 13], the court DENIES petitioner's "motion for entry of default and default judgment" [D.E. 18].

Next, for the reasons discussed below, the court grants respondent's motion to dismiss.

Relevant Procedural History:

On July 26, 2023, Quartez Travon Moore ("petitioner") filed *pro se* a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. Pet. [D.E. 1]. On April 1, 2024, respondent filed an initial answer [D.E. 14], a motion to dismiss, Mot. [D.E. 15], and a memorandum together with exhibits [D.E. 16]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the motion to dismiss, the response deadline, and the consequences of failing to respond. [D.E. 17]. Petitioner timely filed a response. [D.E. 19].

Background:

The North Carolina Court of Appeals ("NCCOA") described the underlying crimes of conviction, to which petitioner had stipulated as the factual basis for his guilty plea, as follows:

> On the evening of 11 July 1996, [petitioner] and Torrey Earl Midgette went to the house of B.H. where she lived alone. That night, B.H. heard her front storm door banging. After she looked outside her window, B.H. opened the front door. [Petitioner] pushed the door, shoved B.H., and forced himself on top of B.H. [Petitioner] and Midgette demanded money from B.H. One of them stated, "B - - - - -, what about this n - - - - - ?" Midgette emptied the contents of B.H.'s purse, ransacked the house, and threw B.H.'s dog against the wall or window. [Petitioner] forced B.H. to perform oral sex. Midgette hit B.H. with a belt and told [petitioner], "Leave the ugly white b - - - - alone. Let's get the money and get out."
>
> [Petitioner] then began having vaginal intercourse with B.H., during which he took a silver watch from her wrist. [Petitioner] also put his finger inside her vagina, put it inside her mouth, and made a comment. Throughout the evening, defendant and Midgette made several racial statements, "Now you will be treated like our people were, white b - - - -" and "Now you're going to have to get on your knees like we had to do for you whites." Afterwards, Midgette hit B.H. in the head and face with his fists. B.H. wrote them a check for $200. As [petitioner] and Midgette left, one of them stated, "Get the knife and cut her." B.H. had a laceration to her nose, and bruising on her arms, back, and legs.

Resp't Mem. Attach., Ex. 5 [D.E. 16-6] (printout of State v. Moore, No. COA97-549 (N.C. Ct. App. Nov. 18, 1997) (unpublished).

On January 15, 1997, petitioner pleaded guilty to: (1) two counts of second-degree sexual offense; (2) second-degree rape; (3) first-degree burglary; and (4) felonious larceny. Id., Ex. 1 [D.E. 16-2] at 1–6. Petitioner was sentenced to three consecutive sentences of confinement. Id. Two of the sentences were for 125–159 months and the third was for 95–123 months. Id.

On January 22, 1997, petitioner filed a notice of appeal stating he "was unclear as to the plea agreement" and believed his constitutional rights were violated. Id., Ex. 4 [D.E. 16-5].

On November 18, 1997, the NCCOA issued an unpublished opinion finding no error. See id., Ex. 5 [D.E. 16-6] (printout of Moore, No. COA97-549 (N.C. Ct. App. Nov. 18, 1997)).

On February 11, 1999, petitioner filed *pro se* in the trial court an affidavit and motion for appropriate relief ("MAR"). Id., Ex. 6 [D.E. 16-7].

On September 15, 1999, the trial court denied the MAR. Id., Ex. 7 [D.E. 16-8].

On November 2, 2009, petitioner filed *pro se* in the trial court another MAR.  Id., Ex. 8 [D.E. 16-9].

On April 19, 2010, this MAR was denied as "without merit."  Id., Ex. 9 [D.E. 16-10].

On February 15, 2019, petitioner filed in the trial court a motion for postconviction DNA testing, id., Ex. 10 [D.E. 16-11], and an "Affidavit of Actual and Legal Innocence," id., Ex. 11 [D.E. 16-12].

On February 22, 2019, petitioner filed in the trial court a motion to withdraw his plea agreement.  Id., Ex. 12 [D.E. 16-13].

On March 28, 2019, the trial court denied: (1) the Affidavit of Actual and Legal Innocence; (2) the motion for post-conviction DNA testing; and (3) the motion to withdraw the plea agreement.  Id., Ex. 13 [D.E. 16-14].

On April 15, 2019, petitioner filed in the trial court a Notice of Appeal as to the denial of the motions for post-conviction DNA testing and withdrawal of his plea agreement, but this notice does not specify the court to which he was appealing to and is captioned, "NC Court of General Justice."  Id., Ex. 14 [D.E. 16-15].  No court appears to have responded to this notice.

On December 5, 2022, petitioner filed *pro se* in the NCCOA a petition for writ of certiorari ("PWC").  Id., Ex. 15 [D.E. 16-16].  On December 28, 2022, the NCCOA dismissed this petition "for unreasonable delay."  Id., Ex. 16 [D.E. 16-17].

On January 20, 2023, petitioner filed in the North Carolina Supreme Court: (1) a notice of appeal of right; (2) a motion for suspension of rules; and (3) a petition for writ of discretionary review ("PDR").  Id., Ex. 17 [D.E. 16-18].  The North Carolina Supreme Court dismissed these three filings on June 20, 2023.  Id., Ex. 18 [D.E. 16-19].

3

Discussion:

As his grounds for relief, petitioner first contends the prosecutor failed to disclose potentially exculpatory DNA evidence from State Bureau of Investigation laboratory reports. See Pet. [D.E. 1] at 5. Second, petitioner argues that the prosecutor misrepresented the maximum possible sentence as 1,042 months "when in fact petitioner was only facing roughly half of that." Id. at 7. Third, petitioner argues that he "was unlawfully arrested, illegally searched, and coerced into confessing to crimes he didn't commit." Id. at 9.

Respondent argues this petition, filed after the one-year limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), is untimely. Resp't Mem. [D.E. 16] at 6.

Petitioner responds that the motion to dismiss should be denied as his claims are based upon: "newly discovered DNA evidence of actual innocence"; "due diligence and exception to procedural bar"; and "*Brady* violation and challenge to guilty plea." See Pet'r's Resp. [D.E. 19].

AEDPA requires an individual in custody pursuant to the judgment of a state court to file any application for a writ of habeas corpus within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); see Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005).

4

AEDPA's one-year limitation period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Hernandez v. Caldwell, 225 F.3d 435, 438–39 (4th Cir. 2000). A post-conviction review application is pending from initial filing in state court until final disposition in the highest state court. See Taylor v. Lee, 186 F.3d 557, 560–61 (4th Cir. 1999). The running of AEDPA's limitation period resumes once the state's highest court resolves the state post-conviction proceedings. Harris v. Hutchinson, 209 F.3d 325, 327–28 (4th Cir. 2000). Moreover, the time between when a petitioner's conviction becomes final and when a petitioner files a state application for post-conviction relief also counts against AEDPA's limitation period. Id. at 328; see also Holland v. Florida, 560 U.S. 631, 635–38 (2010).

Section 2244(d)(1)(A) requires the court to determine when petitioner's judgment became final. See 28 U.S.C. § 2244(d)(1)(A). Because petitioner did not file a PDR in the North Carolina Supreme Court on direct appeal, see Pet. [D.E. 1] at 2, his conviction became final not later than December 29, 1997, *i.e.*, thirty-five days from the date the NCCOA issued the opinion. See N.C. R. App. P. 15(b), 27(a), 32(b); Gonzalez v. Thaler, 565 U.S. 134, 150 (2012).

Petitioner does not claim the Supreme Court made retroactively applicable to cases on collateral review a relevant newly recognized constitutional right. Cf. 28 U.S.C. § 2244(d)(1)(C).

Although petitioner asserts state action prevented his timely filing as to his first ground for relief, see 28 U.S.C. § 2244(d)(1)(B), as discussed below, he did not file his petition within one year of the date any such impediment was removed, *i.e.*, when he had the requested DNA evidence.

Turning to § 2244(d)(1)(D), the factual predicate for petitioner's second and third grounds for relief "could have been discovered through the exercise of due diligence" by, at the latest, the

5

date that his conviction became final. See Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) ("Wade") (holding the § 2244(d)(1)(D) one-year limitation period starts when a petitioner could have discovered the factual predicate "through public sources"), cert. denied, 540 U.S. 912 (2003); Green v. Johnson, 515 F.3d 290, 305 (4th Cir. 2008) (reaffirming the holding in Wade), cert. denied, 553 U.S. 1076 (2008). Thus, as to petitioner's second and third grounds for relief, AEDPA's one-year limitation period began December 29, 1997, and ran uninterrupted for 365 days until it expired, and his February 11, 1999, MAR did not reopen his time for filing a habeas petition as to these grounds for relief. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

The court now turns to petitioner's first ground for relief – that the prosecutor failed to disclose allegedly exculpatory DNA evidence prior to trial. In reliance on these laboratory results, petitioner asserts he makes an "actual innocence showing." See Pet'r's Resp. [D.E. 19] at 8–10.

Applying § 2244(d)(1)(D), the factual predicate for this ground for relief arose when petitioner had the relevant laboratory results. The record reflects he had these results, at the latest, on April 15, 2019. See Resp't Mem. Attach., Ex. 14 [D.E. 16-15]. As noted above, however, he did not file a PWC in the NCCOA until December 5, 2022. Id., Ex. 15 [D.E. 16-16]. Because the NCCOA dismissed this PWC "for unreasonable delay," id., Ex. 16 [D.E. 16-17], the PWC was untimely under state law and petitioner's motions did not remain "pending" for the purposes of AEDPA, see Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) (holding a petitioner is not entitled to statutory tolling under § 2244(d)(2) when postconviction filing is untimely under state law); Carey v. Saffold, 536 U.S. 214, 225 (2002) (indicating that state appellate filings must be timely under state law for the motion to remain "pending" for federal habeas purposes); Artuz v. Bennett, 531 U.S. 4, 8 (2000) (holding that, because time limits on postconviction petitions are

"condition[s] to filing," an untimely petition would not be deemed "properly filed"). Thus, as to his first ground for relief, AEDPA's one-year limitation period began not later than April 15, 2019, and ran uninterrupted until it expired 365 days later, see 28 U.S.C. § 2244(d)(1)(D), and his subsequent PWC did not reopen his time for filing a federal habeas petition as to this ground for relief, see Minter, 230 F.3d at 665. Accordingly, absent equitable tolling, all three of petitioner's grounds for relief are untimely.

Equitable tolling of AEDPA's one-year limitation period applies only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (quotation omitted). A court may allow equitable tolling under section 2244 "in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green, 515 F.3d at 304 (quotations omitted); see Jackson v. Kelly, 650 F.3d 477, 491–92 (4th Cir. 2011). "[A]ny invocation of equity to relieve the strict application of a statute of limitations," however, "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330.

Although petitioner asserts that he diligently pursued his rights, see Pet'r's Resp. [D.E. 19] at 6–8 (arguing, despite his diligent requests, the laboratory reports on which he seeks to rely were withheld by the State), he does not allege, and the record does not reflect, that any extraordinary circumstance prevented him from timely filing a federal habeas petition within one year of the date he became aware of the laboratory reports – April 15, 2019, at the latest – or, as to his other claims, within one year from the date when his conviction became final. Cf. Holland, 560 U.S. at 649.

7

To the extent petitioner asserts that he is unfamiliar with the law, was incarcerated, and lacked legal representation, such grounds are insufficient to support a finding of equitable tolling. See United States v. Sosa, 364 F.3d 507, 512–13 (4th Cir. 2004); Harris, 209 F.3d at 330–31. Accordingly, because petitioner as not made the requisite showing, equitable tolling is not warranted. See Holland, 560 U.S. at 649; Green, 515 F.3d at 304.

Petitioner also asserts he makes an actual innocence showing. See Pet'r's Resp. [D.E. 19] at 8–10. A habeas petitioner may overcome AEDPA's one-year limitation period upon a showing of "actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 393–94 (2013); see Hayes v. Carver, 922 F.3d 212, 216–17 (4th Cir. 2019); Finch v. McKoy, 914 F.3d 292, 294 (4th Cir. 2019).

Although a showing of actual innocence may serve as a "gateway" to the review of time-barred or otherwise procedurally barred federal claims, "tenable actual-innocence gateway pleas are rare" because "'a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 569 U.S. at 386 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see Bousley v. United States, 523 U.S. 614, 623 (1998) (noting, "'actual innocence' means factual innocence, not mere legal insufficiency." (citation omitted)); Teleguz v. Pearson, 689 F.3d 322, 329 (4th Cir. 2012). For a credible actual-innocence claim, petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

Here, the results in one laboratory report to which petitioner cites reflect that the DNA of Midgette, petitioner's co-defendant, matched samples taken from Midgette's own hat, pants, and

8

shirt. Resp't Mem. Attach., Ex. 13 [D.E. 16-14] at 9–10. Other laboratory results in this report reflect that: although human blood was observed on petitioner's pants, the ABO blood grouping, *i.e.*, blood type, was inconclusive; that "microscopic examination of the vaginal, rectal, and oral smears [from the victim] . . . failed to reveal the presence of spermatozoa"; and that "analysis of the swab specimens . . . and outer clothing [a pair of shorts and a blouse] failed to reveal the presence of semen." Id. at 9.

Different laboratory results include findings that a latent palmprint of petitioner's was on miscellaneous paper items at the scene, id. at 12–13, and that "Negroid [sic] pubic hairs," collected via "tapings" on a large rug at the scene, were microscopically consistent with petitioner's pubic hair such that "these two (2) pubic hairs could have originated from" petitioner, id. at 7.

Petitioner contends that these laboratory results "create a 'reasonable probability'" that Petitioner did not have sexual intercourse with the victim," and he further argues that an FBI publication calls into question the reliability of microscopic hair analysis, and that use of the term "negroid" has fallen out of favor. See Pet'r's Resp. [D.E. 19] at 2–5.

Notably, these laboratory reports all were completed before petitioner's January 15, 1997, guilty plea. See Resp't Mem. Attach., Ex. 13 [D.E. 16-14] at 6–7 (Jan. 7, 1997); id. at 8–9 (Sept. 3, 1996); id. at 10–11 (Oct. 1, 1996); id. at 2–13 (Nov. 4, 1996). Thus, the evidence from these reports is not "new" for the purposes of an "actual innocence" claim. Schlup, 513 U.S. at 324; accord Evans v. Williams, No. CV 6:18-1238-JFA-KFM, 2019 WL 3883648, at *8 (D.S.C. June 28, 2019) (finding that allegedly exculpatory DNA evidence available before petitioner's guilty plea was not "new" for the purposes of an "actual innocence" claim), report and recommendation adopted, No. CV 6:18-1238-JFA-KFM, 2019 WL 3858998 (D.S.C. Aug. 15, 2019).

9

Moreover, as noted above, despite having these laboratory reports since April 15, 2019, at the latest, petitioner did not file the instant federal habeas petition until July 26, 2023. See McQuiggin, 569 U.S. at 387 ("a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.").

Petitioner also does not show the evidence from these laboratory reports is "exculpatory." Cf. Schlup, 513 U.S. at 324. It is unremarkable that petitioner's co-defendant's DNA was on the co-defendant's own clothing. The inconclusive blood type of the blood detected on petitioner's clothing, the presence of petitioner's latent handprint, and the collection of two pubic hairs that may have originated from petitioner plainly do not exclude him as the perpetrator. Also, as other courts have noted when considering "actual innocence" claims, the absence of detectable sperm in laboratory testing does not show petitioner did not have forcible sex with the victim. See, e.g., Belcher v. Berghuis, No. 1:12-CV-504, 2015 WL 1893428, at *15 (W.D. Mich. Apr. 27, 2015); Thomas v. Kearney, No. CIV.A. 00-903-SLR, 2002 WL 1446697, at *6 (D. Del. June 25, 2002).

In short, the laboratory reports upon which petitioner seeks to rely are not "new," and he also does not persuade the court that, considering these laboratory reports, "no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." Cf. McQuiggin, 569 U.S. at 386; Schlup, 513 U.S. at 329.

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and because none of the issues are adequate to deserve encouragement to proceed further, the court also denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Conclusion:

For the reasons discussed above, the court: DENIES petitioner's motion for entry of default and default judgment [D.E. 18]; GRANTS respondent's motion to dismiss [D.E. 15]; DISMISSES WITHOUT PREJUDICE the petition as time-barred under 28 U.S.C. § 2244(d)(1); DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED this 6Th day of March, 2025.

RICHARD E. MYERS II
Chief United States District Judge